**IN THE COURT OF APPEALS OF IOWA**

No. 24-1841
Filed May 7, 2025

**IN THE INTEREST OF M.P.,**
**Minor Child,**

**K.C., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon,

Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Neven J. Conrad of Conrad Law Firm, Fort Dodge, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Brandy R. Lundy, Moorland, attorney and guardian ad litem for minor child.

Considered without oral argument by Greer, P.J., and Badding and

Chicchelly, JJ.

**GREER, Presiding Judge.**

The father appeals the termination of his parental rights, arguing the juvenile court wrongly found a statutory basis for termination under Iowa Code section 232.116(1)(h) (2024), termination is not in the best interests of the child, and the court should have applied a permissive exception to termination.[1] Additionally, the father contends the juvenile court violated his constitutional due process rights, should have permitted a six-month extension to termination proceedings or imposed a guardianship, and failed to provide reasonable efforts for reunification.

After our de novo review, *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we affirm the termination of parental rights.

**Due process.**

For the first time on appeal, the father argues that he was "precluded from his due process right to participate in [the] underlying [child-in-need-of-assistance] proceeding prior to a termination of parental rights." "Notice in child neglect and dependency proceedings is jurisdictional." *In re Hewitt*, 272 N.W.2d 852, 854 (Iowa 1978). Error preservation concerns are not an impediment to such a challenge because a judgment entered without notice to a parent is void and "subject to attack at any time." *See In re S.P.*, 672 N.W.2d 842, 846 (Iowa 2003); *see also In re J.C.*, No. 18-1514, 2018 WL 6719418, at *1–2 (Iowa Ct. App. Dec. 19, 2018). *But see In re S.D.*, No. 18-2206, 2019 WL 1294108, at *1 (Iowa

---

[1] The mother consented to the termination of her parental rights.

Ct. App. Mar. 20, 2019) (finding procedural due-process claim based on lack of notice was not preserved for review where it was not raised in juvenile court).

Turning then to the father's notice argument, the record shows that the father was never formally served with notice of the State's petition to adjudicate the child in need of assistance or added as a party in that case.[2]  Instead, the father found out about the proceedings in October 2023 after one of his relatives saw a notice in the newspaper about the hearing on the State's petition to terminate the parental rights of the mother and all putative fathers.[3]  That relative contacted the county attorney with the father's contact information.  The HHS case manager reached out to the father and initiated services for him.  The father applied for and was appointed an attorney to represent him in both the child-in-need-of-assistance and termination cases.  The court also ordered paternity testing, which established the father as the child's biological parent in November.  At the permanency hearing in January 2024, the court granted the father—who was already participating in services—an extension of time to work towards reunification with the child.  By the termination hearing in October, the father had been participating in services for

---

[2] An attachment to the State's petition to adjudicate the child in need of the court's assistance stated the father was unknown.  The State then published notice of that proceeding, with no affidavit indicating that a reasonably diligent effort was made to notify the child's parent or that personal service could not be had.  *See In re E.P.*, No. 10-1216, 2010 WL 3894581, at *1 (Iowa Ct. App. Oct. 6, 2010) (discussing notice requirements in child-in-need-of-assistance proceedings); *see also J.C.*, 2018 WL 6719418, at *2.

[3] The father's petition on appeal also mentions the failure of the State and the Iowa Department of Health and Human Services (HHS) to diligently ascertain his identity early in the case.  Yet, the father testified at the termination hearing that he was aware the mother had a child in April 2023, shortly after the birth date.  Likewise, a HHS report noted that the father posted on social media that he was a "father" multiple times before his relative came forward to ask about the proceedings.

one year.  Yet he now argues that the lack of notice cost him the "right to participate and invaluable time."  We disagree.

The father could have challenged the State's service of notice and requested the adjudicatory or dispositional order be vacated in October 2023 when he first found out about the proceedings.  He failed to do so.  Instead, the father participated in the proceedings for the next year with the assistance of an attorney.  "Where a party consents to an action by his presence and silence, he is estopped from later challenging the validity of the proceedings."  *In re J.F.*, 386 N.W.2d 149, 152 (Iowa Ct. App. 1986) (holding that a father who had independently learned of child-in-need-of-assistance proceedings waived the right to later have the dispositional order vacated), *superseded by statute on other grounds as recognized in In re A.S.*, No. 17-0663, 2017 WL 2665119, at *1 n.1 (Iowa Ct. App. June 21, 2017); *see also E.P.*, 2010 WL 3894581, at *2 (finding a father who was not properly noticed of child-in-need-of-assistance proceedings but participated in them waived his challenge to that notice in his appeal from an order terminating his parental rights); *J.C.*, 2018 WL 6719418, at *3 (noting that even if a father did not have "actual knowledge of the child-in-need-of-assistance proceeding, that fact did not obviate the need to provide formal notice, *absent some participation by him* in those proceedings" (emphasis added) (cleaned up)).

Unlike cases where we have held that lack of notice of the child-in-need-of-assistance proceeding rendered that proceeding void, the father here had actual notice of the proceeding, attended at least one hearing, and fully participated in services before the State proceeded with its petition to terminate his parental rights.  *Cf. J.C.*, 2018 WL 6719418, at *3 (finding on the father's appeal from the

termination of his parental rights that the "agency's failure to notify the father of the child-in-need-of-assistance proceedings prevented him from being heard in the child-in-need-of-assistance action and rendered the proceeding void as to him"); *accord In re A.L.*, No. 14-0428, 2014 WL 2432421, at *2 (Iowa Ct. App. May 29, 2014). *But see In re M.L.M.*, 464 N.W.2d 688, 690 (Iowa Ct. App. 1990) (rejecting a father's argument that "the failure to include him in the child in need of assistance proceeding requires a reversal of the termination and a remand to include him in the child in need of assistance proceeding" where the statutory ground for termination did not require such proceeding or offering of services to assist with parenting). We accordingly conclude that the State's failure to formally serve the father with notice of the child-in-need-of-assistance proceeding does not require a reversal of the order terminating his parental rights which, as discussed below, was supported by clear and convincing evidence. *See E.P.*, 2010 WL 3894581, at *2.

**Section 232.116(1)(h).**

Next, the father argues that the State did not prove termination by clear and convincing evidence. "Termination of parental rights under chapter 232 follows a three-step analysis." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). First, the court must determine if a statutory ground for termination exists. *Id.* The juvenile court terminated the father's parental rights under section 232.116(1)(h), which allows the court to terminate when it finds all of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months,

or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father contests the fourth element of section 232.116(1)(h), arguing the child could have been returned to the custody of the father at the time of termination proceedings. He argues parents are not required to complete the entirety of the case plan to avoid termination and, while he has not maintained sobriety, he asserts he made good faith efforts toward completion of HHS's case plan.

As the father testified, he was twenty-eight days sober at the time of the termination trial, so we see the progress he references, but section 232.116(1)(h) requires a separate and distinct calculus; we must determine if the child could be safely returned to the custody of the parent at the time of termination proceedings. *Cf.* Iowa Code § 232.116(1)(e)(3) (considering whether a parent made "a genuine effort to complete the responsibilities prescribed in the case permanency plan" as part of the statutory ground). With that in mind, we review the record evidence of the father's substance use history.

The father became involved with termination proceedings in October 2023, with paternity confirmed in November. In January 2024, the father was tested for illicit and dangerous substances; he tested positive for methamphetamine and amphetamines on January 10 and tested positive for alcohol and methamphetamine on January 24.[4] He attended extended outpatient treatment

---

[4] Initial efforts were made during November and December 2023 to commence drug testing but the father reported problems with the drug patch, was unable to attend a testing, and was generally evasive with the HHS social worker.

for alcohol and methamphetamine use. In February, the father self-reported additional use of methamphetamine and alcohol. The father tested positive for alcohol before a group meeting, with a BAC of 0.07, and then tested negative for alcohol after the group had concluded. In March 2024, the father was admitted to a detox unit, where he tested positive for methamphetamine, amphetamines, MDMA, THC, benzodiazepines, and alcohol. Nearly a month later, on April 5, the father was discharged from outpatient care. In mid-April, he tested positive for alcohol. Less than one week later, the father was breathalyzed and tested positive for alcohol with a BAC of 0.077 and then 0.075. On April 24, he tested positive for methamphetamine. The father remained sober for a period after late April, but he relapsed on alcohol in early June, telling a family and child services worker that that he had "a few drinks" at an earlier gathering. In July, the father tested positive for methamphetamine, amphetamines, and THC. On August 5, the father again tested positive for methamphetamine, amphetamines, and alcohol. Less than two weeks later, on August 19, the father tested positive for methamphetamine, amphetamines, and alcohol again. In October, shortly before the termination trial, the father admitted using methamphetamine and expressed an interest in attending inpatient treatment. At the time of termination hearing, the father reported he was sober for almost a month and confirmed he was still receiving inpatient treatment for his substance use. The HHS social worker noted in reports that the father was not honest about his substance use.

Children deserve a safe and stable home; continued drug use jeopardizes a child's safety. *See In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017) ("Methamphetamine is a scourge."); *see also In re J.P.*,

No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."). The father's very recent sobriety, which he has not maintained in day-to-day life outside of inpatient treatment, is inadequate to show the father will maintain sobriety in the long term. *See In re K.V.*, No. 19-1775, 2020 WL 110439, at *1 (Iowa Ct. App. Jan. 9, 2020) ("Even assuming the mother has managed six months of sobriety, a short period of sobriety is not a reliable indicator of her ability to remain sober when considered in light of her history, which includes ten years of substance use and several prior failed attempts at sobriety.").

As a result of the father's continued substance use, the State proved the child could not be returned to the father's custody at the time of the termination hearing. The statutory ground for termination was established.

**Best interests.**

If a court finds a statutory basis for termination, the court must consider whether termination is in the best interest of the child. *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests."). "A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests." *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). "In deciding whether to terminate parental rights based on a particular ground, we must give primary consideration to 'the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child.'" *D.W.*, 791 N.W.2d at 708 (quoting

Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41.

The father argues that termination is not in the child's best interests because he was actively involved, HHS does not "raise any safety issues with the father and [the child]," and his substance use did not put the child at risk at supervised visits. But if the father does not remain sober, his home cannot be a safe and stable placement for the child; his substance use is not simply a minor hurdle.

The child, eighteen months old at the time of the termination hearing, has been in her foster care placement for her entire life. The HHS social work case manager reported at termination proceedings that the child was doing "great" in her current placement. Although the father attempts to distinguish between the facts of this matter and *P.L,* we do not find a meaningful difference. 778 N.W.2d at 41. We cannot return the child to the father's custody because of his substance use. It is not in the best interests of the child to wait for the father to achieve long-term sobriety at the expense of the child's stability and sense of permanency. Finding the child is doing well in her current placement, and has been for the entirety of her life, termination of the father's parental rights is in the best interests of the child.

**Permissive exceptions.**

Our third and final step of termination analysis asks whether any permissive exception precludes termination. *See* Iowa Code § 232.116(3) (allowing the court to forgo termination under certain enumerated circumstances). "'The factors

weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation omitted).

Of the six enumerated permissive exceptions, the father asks this court to consider two exceptions—section 232.116(3)(a) and (c). The court can avoid termination under section 232.116(3)(a) when "[a] relative has legal custody of the child" and under section 232.116(3)(c) when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." First, we note the child's foster placement is not a relative of the child and is not the legal custodian of the child, so section 232.116(3)(a) does not apply. Section 232.116(3)(c) warrants further analysis.

The father argues, "[T]estimony indicated that there exists a bond between [the child and the father]. Severing that bond would disadvantage [the child] by eliminating her only biological relative and that bond." We do not doubt that the father loves his daughter. But in deciding to apply a permissive exception, we weigh the harm of severing the parent-child bond against the father's "inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709. In this matter, the father's inability to provide a safe and sober home for the child outweighs the real harm of severing the parent-child relationship. We decline to apply a permissive exception to termination.

**Reasonable efforts.**

The father's reasonable-efforts argument focuses on the limited visitation of five hours per week HHS provided him over the course of these proceedings and that the grandparents were not involved with or allowed to supervise the visits. He acknowledges that he failed to raise this issue in the juvenile court but argues he did not have the opportunity. To preserve error on a claim for reasonable efforts, "the parent must [raise their complaint regarding services] at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding" or on appeal. *Id.* The father made no request for additional or expanded visitation at any time before the termination hearing.

As to the efforts made, the juvenile court noted, "The Court further finds that reasonable efforts have been made to achieve permanency or finalize a permanency goal for the child, as documented by the written reports and the case permanency plan." As the father did not object to services early in the process, so appropriate other services or arrangements could have been offered, we do not consider this issue on appeal. *See In re M.M.*, No. 23-0618, 2023 WL 4533301, at *4 (Iowa Ct. App. July 13, 2023).

**Six-month extension.**

The father asks this court for an extension of time to work toward reunification or to impose a guardianship in lieu of termination. We address each request, finding the facts of this matter do not warrant an extension or establishment of a guardianship.

The court may grant a parent additional time to work toward reunification if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We must consider if giving the parent more time is in the child's best interests. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). And "[t]he judge considering [an extension] should . . . constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re A.C.*, 415 N.W.2d 609, 613–14 (Iowa 1987). In the past, we declined to grant an extension "in part because of all the uncertainty caused by [the parent's] only recent progress and the court's inability to confirm her progress." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

In evaluating if an extension is warranted, we must determine if outstanding issues preventing reunification will be resolved in six months. This father had twelve months since the start of these termination proceedings to show the court he could reach and maintain sobriety. And even with the support of both outpatient and inpatient treatment, the father has failed to do so. Given the father's established pattern of using illicit and dangerous substances over the months leading up to the termination trial, we cannot find that an additional six months would ameliorate the court's concerns related to the child's safety over the long term. We decline to grant an extension of any length.

**Guardianship.**

As an alternative, the father asks this court to impose a guardianship with the paternal grandparents instead of terminating his parental rights. *See* Iowa Code §§ 232.117(5), .104(4). Generally, "a guardianship is not a legally preferable

alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (citation omitted). "When the statutory requirements for termination are met, we are not required to order a guardianship in lieu of termination." *In re A.B.*, No. 23-1968, 2024 WL 470362, at *4 (Iowa Ct. App. Feb. 7, 2024). Guardianships are especially disfavored for young children. *See In re L.D.*, No. 21-0223, 2021 WL 1661152, at *5 (Iowa Ct. App. Apr. 28, 2021); *see also A.S.*, 906 N.W.2d at 478.

The child at issue is young, only eighteen months old at the time of termination. She has been in her current foster care placement for the entirety of her young life and appears to be doing well. A guardianship, which may be modified, would only perpetuate the lack of permanency the child has experienced up to this point. *See A.S.*, 906 N.W.2d at 477–78. And the social work case manager testified over her concerns about the child's safety in that the paternal grandparents enabled the father by making excuses for him and often were not able to tell if he was impaired. Although guardianships are useful legal tools in certain situations, in the instant matter, guardianship is not in the child's best interest.

We affirm the termination of parental rights.

**AFFIRMED.**